# UNITED STATES DISTRICT COURT
### for the
District of Alaska

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 4 23-mj-00057-SAO |
| Jun "Harry" Liang and Brian Phelan | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___August 1, 2021 - October 1, 2022___ at or near ___Fairbanks___ in the

___ District of ___Alaska___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 16 U.S.C. 3372(a)(2)(A) and (4) | Attempted Violation of the Lacey Act (LIANG/PHELAN) |
| 16 U.S.C. 3372(d)(2), 18 U.S.C. 371 | False Labelling Conspiracy (LIANG/PHELAN) |
| 18 U.S.C. 1343, 18 U.S.C. 371 | Wire Fraud Conspiracy (LIANG/PHELAN) |
| 18 U.S.C. 1343 | Wire Fraud (LIANG) |
| 18 U.S.C. 922(g)(5) | Illegal Possession of Firearm by Alien (LIANG) |
| 18 U.S.C. 1956(a)(1)(B)(i), | Money Laundering (LIANG) |
| 18 U.S.C. 1957(a) | Money Laundering (LIANG) |

This criminal complaint is based on these facts:

See attached affidavit

() Continued on the attached sheet.

*Michael Loughton*
*Complainant's signature*

SA M............
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___July 12, 2023___

City and state: ___Anchorage, Ak.___

Hon. Deborah M. Sm...... Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OFCRIMINAL COMPLAINT

I, Michael Loughton, Special Agent with the United States Fish and Wildlife Service, being duly sworn and deposed, state as follows:

### AGENT AND STATUTORY BACKGROUND

1.      I am a Special Agent (SA) with the United States Fish and Wildlife Service (USFWS). I have been so employed in federal law enforcement since 2007. As part of my USFW training, I have attended the Federal Law Enforcement Training Center Criminal Investigator Program and USFWS Special Agent Basic Training Course. I have also attended numerous basic and advanced criminal investigation courses during my career. I have received training in investigating violations of federal laws, in particular Title 18 and Title 16 laws. I have investigated federal cases involving Illegal Possession of a Firearms, Manufacturing of Controlled Substances, Arson, Narcotic Smuggling, False Statements, Theft of Government Property, Wildlife Trafficking, and the Illegal Sale of Wildlife. Prior to becoming a USFWS Special Agent I was employed as a Special Agent with the United States Forest Service, where I investigated all manner of misdemeanor and felony crimes.

2.      As per Title 16 United States Code Section 3375(b), I am a duly authorized Federal Law Enforcement officer commissioned to serve warrants, conduct investigations, and make arrests pursuant to federal law in matters where the USFWS and federal government has jurisdiction over the subject and/or the territory where the offense has taken place.

### VIOLATIONS OF LAW

3.      As to violations of law, Paragraphs 4 through 15 apply to both defendants LIANG and PHELAN. As to violations of law, paragraphs 16 through 18 apply to defendant LIANG only.

4.      Title 16 United States Code § 3372(4) of the Lacey Act makes it unlawful to attempt to

commit an act described in paragraphs 1, 2 or 3 of the Lacey Act, Title 16 U.S.C. § 3372(a) et. seq.

5.      Title 16 United States Code § 3372(a)(2) and (a)(2)(A) makes it unlawful for any person to sell in interstate commerce any wildlife taken, possessed, transported or sold in violation of any law or regulation of any State;

6.      Title 16 U.S.C. Section 3372(a)(4) provides that it is unlawful to attempt to commit any act described in paragraphs (1) through (3) or subsection (e) of section 3372 of the Lacey Act.

7.      Title 16 U.S.C. Section 3372(C) (1) provides that it is deemed to be a sale of wildlife in violation of this chapter for a person to obtain for money or other consideration to offer or provide-

      (A)  guiding, outfitting or other services,

      (B)  a hunting license or permit, for the illegal taking, acquiring, receiving, transporting, or possessing of wildlife.

8.      Title 16 U.S.C. Section 3372(C) (2) provides that it is deemed to be a purchase of wildlife in violation of this chapter for a person to obtain for money or other consideration-

      (A)  guiding, outfitting or other services, or

      (B)  a hunting license or permit, for the illegal taking, acquiring, receiving, transporting or possessing of wildlife.

9.      16 U.S.C. Section 3373(d)(1)(B) states that any person who knowingly engages in conduct that involves the sale or purchase of, or the offer of sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase wildlife with a market value in excess of $350.00, knowing that the wildlife was sold in violation of, or in a manner unlawful under any law or regulation would be guilty of a felony.

10.     16. U.S.C. § 3372(d)(2) of the Lacey Act, False Labeling Offenses provides that it is

unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be; (2) transported in interstate or foreign commerce

11.     16 U.S.C.§ 371 makes it unlawful for two or more persons to conspire either to commit any offense against the United States, and one or more of such persons do any act to effect the object of the conspiracy, to wit Lacey Act False Labelling Conspiracy and Conspiracy to Commit Wire Fraud.

12.     Under the laws of the state of Alaska, AS 08.54.720(9) states that it is unlawful for a person without a current registered guide-outfitter license to knowingly guide, advertise as a registered guide-outfitter, or represent to be a registered guide-outfitter.

13.     Under the laws of the state of Alaska, AS 08.54.720(11) provides that it is unlawful for person without a current registered guide-outfitter license to knowingly outfit a big game hunt, provide outfitting services, advertise as an outfitter of big game hunts, or represent to be an outfitter of big game hunts.

14.     Pursuant to AS 16.05.407(a) It is unlawful for a nonresident to hunt, pursue, or take brown bear, grizzly bear, mountain goat, or sheep in this state, unless personally accompanied by (1) a person who is licensed as, (A) a registered guide-outfitter or a master guide-outfitter under AS 08.54 and who is providing big game hunting services to the nonresident under a contract with the nonresident; or (B) a class-A assistant guide or an assistant guide under AS 08.54 and who is employed by a registered guide-outfitter or a master guide-outfitter who has a contract to provide big game hunting services to the nonresident; or (2) a resident over 19 years of age who is (A) the spouse of the nonresident; or (B) related to the nonresident, within and including the second degree of kindred, by marriage or blood. Subsection (b) provides that an applicant for a nonresident big

game tag for the taking of an animal specified in (a) of this section shall first furnish to the state, on a form provided by the state, an affidavit showing that the applicant will be personally accompanied while hunting by a person who is qualified under the terms of (a) of this section. A person who falsifies the required affidavit is guilty of perjury under AS 11.56.200.

15. With respect to defendant LIANG and PHELAN, Title 18 U.S.C. § 1343, Wire Fraud, makes it unlawful for one, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.] Pursuant to Tile 18 U.S.C. § 1961(1) wire fraud is included as 'racketeering activity.' Pursuant to 18 U.S.C. § 1961(c)(7)(A) the term "specified unlawful activity" means-(A) any act or activity constituting an offense listed in section 1961(1) of this title. By operation of these statutes wire fraud is a specified unlawful activity predicate of the money laundering statute. Title 18 U.S.C. § 371 makes it unlawful for two or more people to conspire to commit wire fraud.

16. With respect to defendant LIANG, Title 18 U.S.C. § 922(g)(5): provides that it is unlawful for any person who, being an alien, is illegally or unlawfully in the United States or except as provided in subsection (y)(2) has been admitted to the United States under a nonimmigrant visa (as defined in section 1019(a)(26) of the Nationality Act (8 U.S.C. 10019(a)(26) to possess a firearm.

17. With respect to defendant LIANG, Title 18 U.S.C. § 1956(a)(1)(B)(i), makes it unlawful, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction, which in fact

involves the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

18. With respect to defendant LIANG, Title 18 U.S.C. § 1957(a) makes it unlawful for one to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, with said property being derived from specified unlawful activity,

19. This affidavit is being submitted in support of a criminal complaint alleging that subject JUN "HARRY" LIANG (hereinafter referred to as "LIANG") and Brian Phelan (PHELAN) each attempted to violate the Lacey Act, 16 U.S.C. § 3372 (a)(2)(A) (to unlawfully sell wildlife taken, possessed, transported, or sold in violation of the laws of the state of Alaska.

20. This affidavit is also being submitted in support of a criminal complaint alleging that subject JUN "HARRY" LIANG (hereinafter referred to as "LIANG") alone violated the following federal criminal laws: (1) 18 U.S.C § 922 (g) (5)(b) which makes it unlawful for one, being an alien, except as provided in subsection(y)(2), and who has been admitted to the United States under a nonimmigrant visa, possesses a firearm), (2) Lacey Act, 16 U.S.C. § 3372 (a)(2)(A) and 3372(a)(4) (attempt to sell wildlife taken in violation of the laws of the state of Alaska), (3) 18 U.S.C § 1343(devised any scheme to defraud for obtaining money by means of fraudulent pretenses, representations transmits by means of wire, radio, or television communication in interstate commerce),(4) 18 U.S.C. § 1956(a)(1)(knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity), (5) 18 U.S.C § 1957(a) (knowingly engage, or attempts to engage, in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by,

through or to a financial institution.)

21.    This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, law enforcement records, court authorized searched, witness interviews, and my training and experience, as well as the training and experience of other law enforcement agents. Direct quotations from communications conducted in Mandarin Chinese were taken from certified transcriptions.

22.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included all facts known to me or others concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause that the defendant violated the federal criminal laws set forth herein.

## SUMMARY OF OFFENSE CONDUCT

23.    On October 14, 2021, the Alaska State Wildlife Troopers (AWT) Wildlife Investigative Unit (WIU) received a complaint from a source of information (SI-1) about a group of Chinese immigrants conducting unlicensed big game guided hunts in conjunction with a travel agency near Fairbanks, AK in August 2021. SI-1 noted the hunting itinerary being advertised on a Chinese social media site known as "Little Red Book" (www.xiahongshu.com). "Little Red Book" is described as a luxury shopping and e-commerce site, similar to the format of Facebook. All communication on the "Little Red Book" social media site are conducted primarily in the Mandarin language. In addition, all communications on the to be mentioned communications platform identified herein as "WeChat" are also conducted primarily in the Mandarin language.

24.    SI-1 provided AWT WIU Investigator (INV) Scott Bjork a link for the Chinese social media site and profile username "Alaska Guide Lodging" which the investigation revealed was owned and operated by LIANG from at least August 2021. INV Bjork captured screen shots of the

social media post from LIANG. INV Bjork contacted USFWS SA Michael Loughton and provided him the screen shots and the complaint from SI-1. The screen shots showed pictures of an Asian male riding in a black jeep Wrangler, looking through binoculars and squatting while aiming a scoped rifle on the side of a dirt road. A middle-aged white male was also shown wearing full camouflage clothing with a chest holster, driving the same black Jeep, and looking through binoculars. The setting for the screen shots appeared to be a remote unpopulated area topography and vegetation known to your affiant to resemble Alaskan type topography and vegitation. In addition to the screenshots showing the individuals in the field, two screen shots showed a dollar bill with the names "Weigang Wang" and "Brian Phe" written in black marker. Your affiant believes based on the investigation that "Brian Phe" is the Brian Phelan (PHELAN) identified in this affidavit. The screenshots appeared to depict photos taken in an eating establishment.

//

//

//



Subject WANG holding aiming a rifle



Subject PHELAN looking through Binoculars

25.    On November 24, 2021, SA Loughton reviewed LIANG's social medial posts obtained

from SI-1, as well as other posts which were screen copied from the Little Red Book site by your

affiant. The captions on all the reviewed material were in Mandarin Chinese. Your affiant used

the Google online translation tool for Mandarin to English. The Google translation tool returned a

translated the captions on the posts. According to the translation program, the posts were initially

placed on August 27, 2021.  The posts appeared to be documenting a guided caribou hunt of Wang.

My review of other posts from Liang's account on Little Red Book supported this belief. In my

training and experience hunting guides often post photos from their hunts to market future hunts

and entice potential clients. One of the posts on LIANG'S Little Red Book account referenced an

"old American hunter Brian" and "guide". The posts also mentioned the "guide" was compensated.

The post also mentioned the packaging of "deer" meat for out of state transport.  Your affiant

believes, based on the investigation that 'deer meat' is a reference to caribou meat. Wang's hunt

with LIANG was not successful and will be further detailed in  this affidavit. Your affiant believes

that any 'deer meat' referenced, if true, came from another hunt or some other source as Wang's hunt was not successful.

26.     Through investigative techniques USFWS SA's in the Fairbanks area were able to identify the driver of the Jeep shown in LIANG's posts as Brian PHELAN. PHELAN's residential address is 1065 Lakeview Terrance, Fairbanks, AK. SA Loughton was able to locate LIANG's residence at 1057 Lakeview Terrace, Fairbanks AK. Alaska State records indicate that LIANG is the owner/operator of "AK Aurora Travel Inc." LIANG also provides guided sight-seeing tours throughout Alaska to include glacier viewing and Aurora Borealis viewing. The investigation has revealed that LIANG appears to solely market his services to Chinese nationals or Chinese national living in the United States.

27.     Alaska state law requires all persons that provide big game hunting services for compensation to be licensed by the State and to register in the designated guide use area (GUA) they are operating in. It is unlawful to operate as a big game guide/outfitter without being licensed by the state of Alaska pursuant to AS 08.54.720(11). Furthermore, nonresident hunters are required to be accompanied in the field by a licensed big guide while hunting the following big game species: brown/Grizzly bears, mountain goats, and Dall sheep pursuant to AS 16.05.407(A). Neither LIANG nor PHELAN are licensed guides, assistant guides, nor transporters with the state of Alaska.

28.     16 USC § 3372(C)(1)(A) states "it is deemed to be a sale of fish or wildlife in violation of this chapter for a person for money or other consideration to offer or provided guiding, outfitting, or other services for the illegal taking, acquiring, receiving, transporting, or possessing of fish or wildlife."

29.     AWT WIU INV Bjork provided SA Loughton with Alaska Department of Fish and Game

(ADFG) hunting records for Wiegang Wang. Wang a resident of Irvine, CA registered for a 2021 State of Alaska Nonresident hunting license and a registration permit for the 2021-2022 Forty-mile White Mountain Caribou registration hunt. The license and permits for a caribou hunt were obtained on August 24, 2021. Wang's hunting records are consistent with the information provided by SI-1 and LIANG's social media posts referenced in paragraphs 16 and 17 above and the photographs included in this affidavit show topography which could be consistent with the White Mountain hunting area which is within driving distance of Fairbanks, Alaska via dirt roads. ADFG financial information indicate that Wang's hunting license was purchased with a credit card belonging to LIANG.

30.     On February 4, 2022, SA Loughton, and a Homeland Security Investigations (HSI) SA fluent in Mandarin Chinese covertly contacted LIANG via the "Little Red Book" website and the WeChat messaging application. The communications were conducted in Mandarin Chinese and recorded by the HSI SA (UCA-1). SA Loughton submitted the conversations for official translation. Upon initial contact with LIANG, LIANG detailed sight-seeing tours around Fairbanks and a cell phone number of (907) 687-3870. LIANG provided the name/alias of "Harry" during the conversations. UCA-1 messaged LIANG that he was interested in a hunting trip for two people. LIANG responded with an offer of a nine-day, eight-night, caribou hunting trip for $24,300 per person. LIANG also state that a hunting lesson would be required costing between $1,100 and $1,300 per person.

31.     UCA-1 continued the conversation with LIANG on or about February 9, 2022 and asked about the possibility for a guided bear hunt during the fall of 2022. LIANG stated he would have to check with his guide. LIANG responded that a two-person guided bear hunt would be $60,000. LIANG provided photos of Wang's hunting license and documents from ADFG on caribou

hunting and how to identify a male or female caribou, along with images of PHELAN at a shooting range with an Asian male, and an image of PHELAN using binoculars on the side of the road in a remote area. LIANG did not provide UC-1 any Alaska Department of Fish and Game big game guide/outfitter documentation showing he was a legal registered guide/outfitter.

32. LIANG provided UCA-1 his Paypal account as Alaska20999@gmail.com, his Zelle account username as "Jun Liang" and his Wells Fargo account name as "Jun Liang" with an account number ending in X1157.

33. Wells Fargo Bank records confirm LIANG as the sole owner of the checking account ending in X1157. Wells Fargo records show the account being opened on February 19, 2019, in Pomona, CA. Statements for the account were sent to LIANG at 1057 Lakeview Terrace, Fairbanks, AK. According to Wells Fargo records, LIANG received Zelle payments from various individuals. Over 459 transactions were completed utilizing Zelle, many of these transactions were made with individuals with ethnic Chinese names and several of the transaction contained notes referencing Alaska travel. Between November 11, 2021, and February 14, 2022, LIANG made 17 payments to a MAC Federal Credit union account with "Brian" listed as the recipient totaling $9850. SA Loughton confirmed those payments were made to BRIAN PHELAN's MAC Federal Credit Union Account via review of the account records obtained by the investigation. PHELAN is the co-owner of that account along with his wife Jennifer Phelan.

34. SA Loughton reviewed LIANGs Paypal account records. LIANG's Paypal account ending in X0432 received two payments from Eurmax Canopy LLC between August 20, 2021, and August 24, 2021, totaling $11,950. Eurmax Canopy LLC's contact email was listed as robert@eurmax.com. The same email address was listed on ADFG records for Wang's contact email for his 2021 hunting documents. The payment dates are consistent with the purchase of

Wang's 2021 hunting license, registration hunt permit and LIANG's social media posts. The investigation has revealed that Wang uses "Robert" as an English language first name.

35.     Between February 9, 2022, and June 4, 2022, UCA-1 and LIANG conducted communications via WeChat. UCA-1 posed as a Mandarin speaking U.S. Citizen.

36.     On February 12, 2023, UCA-1 and LIANG discussed a fall Brown bear hunt with the hunt to occur towards the end of August 2022. LIANG stated UCA-1 will only need a hunting license and asked if UCA-1 Has a gun permit. LIANG stated his last customer had a gun permit. In further conversation LIANG told UCA-1 that his last customers only had a California driver's license and that they paid him (LIANG) paid $1270 for hunting licenses for caribou with that fee being included in the cost of the hunt. The photo below depicts Wang's Alaska hunting license purchased by LIANG with LIANG's credit card. This photo was given to UCA-1 from LIANG during the time period referenced above.

//

//

//

//

//

//

//

//

//

//

//



Image of WANG's 2021 hunting license and LIANG's Citi Visa Card

37. On February 14, 2022, LIANG responded to UCA-1 when asked about gun permits. LIANG provided a detailed response in how to obtain a gun permit and hunting licenses when you are not a U.S. citizen. LIANG instructed the UCA to first complete a "Hunters Safety Course" that is often required for a state hunting license. LIANG continued to describe how to prove time of residency, what documents would be required, and what identification types they would need to show depending on the different immigration and visa types. LIANG told UCA-1 that the "2nd Amendment" is a privilege and may be revoked for law violations.

38. On February 14, 2023, LIANG messaged the UCA-1 the following: "If you confirm time, then will arrange, pay deposit I will arrange hunting guide and see what month, we will arrange camping gear or find a cabin or hotel and make sure all is coordinated" LIANG continued to state the following: "Then we will go to the hunting area to find animal. The hunted animal you can

ship back of consumption, can find butcher to process and package to ship".

39.     On June 2, 2022, UCA-1 and LIANG discussed price for two-person hunt. LIANG messaged UCA-1 a breakdown of additional costs and gear that the UCA-1 and a hunting partner should bring. LIANG states the following: "me and hunter colleague are very professional, hopefully we will cooperate then the time comes, fight to harvest animals". LIANG continues to describe providing firearms for the hunters as well as camping and outdoor gear.

40.     On June 3, 2022, LIANG described the payment structure for the hunt to UCA-1. LIANG asks for a $15,000 deposit and the remaining fee at the time of the hunting lessons.

41.     On June 29, 2022, LIANG received a $15,000 wire transfer to Wells Fargo account x1157 from UCA-1 that LIANG had requested from UCA-1 as a down-payment toward a brown bear hunt. On July 21, 2022, LIANG made a $21,860 cash withdrawal from Wells Fargo account x1157. The investigation has not been able to determine where or how those were later used. However, on or about July 25, 2022, LIANG purchased a Wells Fargo cashier's check in the amount of $38,898 from account X1157 payable to Alaska Best Choice Auto. Records from Alaska Best Choice Auto reveal that LIANG purchased a 2013 Freightliner Sprinter van with this check plus a $1,000 cash payment, for a total purchase price of $39,989. LIANG purchased the van under the name of AK Aurora Travel, Inc.

42.     On August 21, 2022, UCA-1 and UCA-2 met with LIANG and PHELAN at Lin's Asian Bistro in Fairbanks, AK for dinner. During the dinner meeting, LIANG and PHELAN discussed the itinerary of the hunting trip with the UCAs. LIANG and PHELAN then said they would get licenses for the hunt the following morning (the next day) at the local Alaska Department of Fish and Game office. They also discussed going to a local gun range for rifle shooting lessons.

43.     On August 22, 2022, LIANG picked up the UCAs and drove them to the Fairbanks ADFG

office. LIANG accompanied the UCAs to the customer service counter. LIANG directed the UCAs to purchase nonresident hunting licenses, a black bear harvest ticket, black bear locking tag and a brown bear locking tags. The ADFG employee asked the UCAs who their required big game guide was since they purchased brown bear locking tags. LIANG called PHELAN on his phone and handed the phone to the ADFG employee. The ADFG employee spoke to PHELAN on speaker phone. The ADFG employee asked PHELAN if he was a registered guide. PHELAN stated he was not a guide. PHELAN attested he was the UCAs brother-in-law. (Alaska state law allows for nonresident hunters, in lieu of having a licensed guide to hunt brown bears while accompanied by a second degree of kinship, brother-in-law is included in the second degree of kinship definition.) Based on PHELAN's comments the Alaska Department of Fish and Game issued the UCA's their hunting licenses and locking tags.

44. On August 26, 2022, USFWS SA's conducted an interview with the ADFG employee completed the transaction with the LIANG and the UCA's. The ADFG employee stated that the UCAs were accompanied by a resident that directed the two nonresident hunters (UCA's) through the process. The investigation identified LIANG as the "resident" directing the UCAs. The ADFG employee stated LIANG called PHELAN on his cell phone and handed the phone to the employee. The ADFG employee stated that PHELAN state he was not a guide and that he was the UCA's brother-in-law. LIANG also indicated that PHELAN was the brother-in-law of the UCAs. The ADFG issued the hunting licenses, registration permits, and locking tags to the UCAs. The ADFG employee also indicated she accidently marked PHELAN as a master guide instead of a relative on one of the UCAs nonresident affidavit.

45. On August 22, 2022, UCA-2 gave LIANG two personal checks for $17,160 and $27,840 totaling $45,000 to complete the payment for the bear hunt. LIANG later deposited the checks

into his Wells Fargo checking account ending in X1157.

46.     On August 22, 2022, LIANG paid Gene's Chrysler in Fairbanks, AK. $20,000 for the purchase of a 2016 Mercedes SUV.

47.     On August 22, 2022, LIANG, PHELAN and UCA's traveled to the Chena River State Recreation Area Shooting Range. PHELAN drove UCA-1 in his Jeep Wrangler and LIANG drove UCA-2 in his Mercedes SUV.

48.     During the drive LIANG offered to buy a bear gall bladder from UCA-2 if their hunt was successful. State of Alaska law prohibits the sale of bear parts. LIANG also offered to provide prostitutes to the UCAs during their hunt.

49.     On the way to the range, PHELAN told UCA-1 that Wang did not harvest caribou in 2021 because Wang did not listen to PHELAN instructions once a herd was spotted off the Steese Highway. In addition, Wang did not want to expend effort to practice shooting and sight in PHELAN's rifle. PHELAN also informed UCA-1 that in the past, he set up 2 hunting blinds and bear baiting station in Delta Junction area. In addition, PHELAN said he would not shoot a brown bear because they are gamey in taste. Once all parties arrived at the shooting range, PHELAN gave shooting instructions to the UCAs and provided three rifles and a pistol for the UCAs to shoot. LIANG stated that the firearms were owned by his company. The photos depict PHELAN, UCA-2, and LIANG, respectively at a local Fairbanks Gun Range, Chena River State Recreation Area Shooting Range, on August 22, 2022:

//

//

//

//



PHELAN at shooting range with UCA-2

//

//

//

//

//

//

//

//

//



LIANG firing a pistol at the same range

50.     Upon completion of shooting instructions and target practice, the UCAs, LIANG, and
PHELAN drove to the Quartz Lake Campground (campground), approximately 14 miles northwest
of Delta Junction, AK, where they based their hunting camp.  PHELAN drove his Jeep Wrangler
with LIANG as a passenger. PHELAN's Jeep towed a trailer of camping equipment. The campsite
used by LIANG, PHELAN and the two UCA's is shown below:

//

//

//

//



PHELAN and Jeep at campsite

51.    From August 23, 2022, to August 26, 2022, LIANG and PHELAN provided the UCAs with transportation to and from the field in PHELANs Jeep Wrangler. LIANG and PHELAN provided in the field guiding services to the UCAs by walking them to the hunting area, setting up two portable hunting blinds, providing firearms and ammunition and providing advice while in the field. LIANG again offered prostitutes to the UCA's for approximately $1800 per night or $500 per sex act. LIANG also offered to sell the UCAs bear gall bladder for $5000 each. The photo below shows a hunting blind brought by PHELAN and LIANG to a remote approximately 5 miles from the campground. PHELAN is visible facing the camera, UCA-1 is visible behind the tree next to the blind.

//

//



PHELAN at hunting site

52.     The hunting area was located to the east of Quartz Lake Campground with in approximately 5 nautical miles of the campground. The hunting area was accessed by PHELAN's Jeep and then a short walk.

53.     On August 24, 2022, LIANG informed UCA-1 that he was involved in a bear hunt for client(s) in Petersburg, AK in the beginning of August 2022. The bear hunt was not successful, but LIANG stated he could help arrange a hunt for UCAs at Petersburg in the future as well.

54.     On August 27, 2022, LIANG informed the UCA's that PHELAN would no longer be their guide. PHELAN told the UCA's that he could not continue with the hunt as he made a mistake on his work schedule and had to go back to work. PHELAN stated that "HARRY" (aka LIANG)

would take care of everything. Thereafter, LIANG and PHELAN drove back to Fairbanks while the UCAs stayed at the campsite. LIANG left the UCA's a Savage Axis rifle chambered in 6.5 Creedmoor and ammunition. LIANG returned that evening without PHELAN and took back possession of the rifle. LIANG stated that he paid PHELAN approximately $15,000 for his guide services. Thereafter LIANG provided guide services in the field. He transported the UCAs into the field, set up the hunting blinds, selected the location and accompanied them on their hunt for the next two days.

55.     In addition to possession the Savage rifle, LIANG stated multiple times to the UCAs that he possesses handguns in his residence and often caries one in his vehicle. The investigation has revealed that LIANG was admitted to the United States on February 27, 2016, as a temporary visitor for pleasure - tourism until May 27, 2016. No further extensions or visa category was granted to your affiant's knowledge. To your affiant's knowledge, LIANG is currently out of legal immigration status, and it is believed he is now, as a Chinese national, illegally in the United States. LIANG's immigration status prohibits him from legally possessing firearms. LIANG does not meet the exemptions listed in 18 U.S.C § 922(y)(2), referenced above, as there is no record of LIANG possessing a current and valid state hunting license with the Alaska Department of Fish and Game.

56.     On August 28, 2022, the investigation elected to terminate the hunt. That day, the UCAs told LIANG they wanted to end the hunting trip due to an illness in the family. The UCA's tipped LIANG $1500 and parted ways on August 29, 2022. LIANG transported the Savage Axis rifle back to Fairbanks, AK. LIANG posted a photo of $1500 in cash on his "Little Red Book "account and referred to a large tip from a client.

//

## CONCLUSION

57.     Your affiant submits that there is probable cause to believe that LIANG and PHELAN and attempted to sell big game guiding services for the illegal take of wildlife into interstate commerce in violation of Alaska law, that he (LIANG) illegally possessed a firearm while prohibited by federal law, perpetrated a scheme to defraud clients of funds by means of wire communications, knowingly conducted financial transaction with proceeds of specified unlawful act, and knowingly engaged in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, through or to a financial institution.

58.     Therefore, your Affiant believes that probable cause exists that LIANG and PHELAN attempted to violate the Lacey Act, 16 U.S.C. Section 3372(a)(2)(A).3372(4)  18 U.S.C §371( Conspiracy to commit false labeling) and 18 U.S.C §371( conspiracy to commit wire fraud),that LIANG alone violated 18 U.S.C § 922 (g) (5)(b) (prohibited possession of firearms), 18 U.S.C § 1343 (Wire Fraud though false pretenses of offering guided hunts without being licensed to do so), 18 U.S.C. § 1956(Money Laundering financial transaction with proceeds of specified unlawful act) and  18 U.S.C § 1957 (Money Laundering transaction greater than $10,000).

*Michael Loughton*

MICHAEL LOUGHTON
Special Agent
United States Fish and Wildlife

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this  /2 day of
2023.

Hon. Deborah M. Smith
United States Magistrate Judge
District of Alaska

# INDICTMENT/INFORMATION COVER SHEET

UNITED STATES OF AMERICA

v.                                            Defendant's Name: Jun "Harry" Liang

Jun "Harry" Liang

**DOB:** 08/29/1963

Defendant Juvenile?    ☐ Yes    ☐ No

☐ **Superseding Indictment #**

☒ MJ Complaint #    4:23-mj-00057-SAO

☐ Information

☐ Anchorage    ☒ Fairbanks    ☐ Juneau    ☒ Interpreter needed : Mandarin

☐ Conflict Judge Reardon

---

Defendant's Status and Location:  1057 Lakeview Terrace, Fairbanks, Alaska 99701

☐ In Federal Custody at:    ☐ In State Custody at:    ☐ On Pretrial Release

**Process:**

☒ **Arrest Warrant:**    ☐ Law Enforcement Sensitive    ☐ Sealed    ☐ Habeas ad pros. to follow

☐ Summons

☒ Set for Arraignment and Notify USM

☐ Set Arraignment upon notification from USM that defendant is in district

**Bail (release or detention):**

☐ **Detention (18 USC 3142 (e))**    ☒ **flight risk**    ☐ **danger to community**    ☐ **no ties to community**

☒ Release    ☒ On conditions to be requested    ☐ As previously set by Court

**Charges:**

| Count | Level F-M-P | Code Provision | Offense (if drug charge state type of drug) | Maximum Penalty |
|-------|-------|----------------|--------------------------------------------|-----------------|
| 1 | F | 16 U.S.C. 3372(a)(2)(A) and (4) | Attempted Lacey Act Violation | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 2 | F | 16 U.S.C. 3372(d)(2) 18 U.S.C. 371 | Lacey Act False Labeling Conspiracy | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 3 | F | 18 U.S.C. 1343 18 U.S.C. 371 | Wire Fraud Conspiracy | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 4 | F | 18 U.S.C. 1343 | Wire Fraud | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 5 | F | 18 U.S.C. 922(g)(5) | Illegal Possession of Firearm by Alien | 10 Yrs, $250,000/5yrs probation/3 yrs SR |
| 6 | F | 18 U.S.C. 1956(a)(1)(B)(i) | Money Laundering | 20 yrs/$500,000/5 yrs probation/3 yrs SR |
| 7 | F | 18 U.S.C. 1957(a) | Money Laundering | 20 yrs/$500,000/5 yrs probation/3 yrs SR |

AUSA: Steven Skrocki          Agent/Agency: SA Michael Loughton, USFWS          Agent's Phone: 907-917-8803

# INDICTMENT/INFORMATION COVER SHEET

UNITED STATES OF AMERICA

        v.

Brian Phelan

**Defendant's Name:** Brian Phelan

**DOB:** 12/30/1971

**Defendant Juvenile?** ☐ Yes ☒ No

☐ **Superseding Indictment #**

☒ MJ Complaint #    4:23-mj-00057-SAO

☐ Information

☐ Anchorage    ☒ Fairbanks    ☐ Juneau

☐ Interpreter needed : _____

☐ Conflict Judge Reardon

---

Defendant's Status and Location:   1065 Lakeview Terrace, Fairbanks, Alaska 99701

☐ In Federal Custody at:      ☐ In State Custody at:      ☐ On Pretrial Release

**Process**:

☐ **Arrest Warrant:**    ☐ Law Enforcement Sensitive    ☐ Sealed    ☐ Habeas ad pros. to follow

☒ Summons    1065 Lakeview Terrace
Fairbanks, Alaska 99701

☒ Set for Arraignment and Notify USM

☐ Set Arraignment upon notification from USM that defendant is in district

**Bail (release or detention):**

☐ **Detention (18 USC 3142 (e))**    ☐ **flight risk**    ☐ **danger to community**    ☐ **no ties to community**

☒ Release    ☒ On conditions to be requested    ☐ As previously set by Court

**Charges:**

| Count | Level F-M-P | Code Provision | Offense (if drug charge state type of drug) | Maximum Penalty |
|---|---|---|---|---|
| 1 | F | 16 U.S.C. 3372(a)(2(A) and (4) | Attempted Lacey Act Violation | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 2 | F | 16 U.S.C. 3372(d)(2) 18 U.S.C. 371 | Lacey Act False Labeling Conspiracy | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| 3 | F | 18 U.S.C. 1343 18 U.S.C. 371 | Wire Fraud Conspiracy | 5 yrs/$250,000/5 yrs Probation/3 yrs SR |
| | | | | |
| | | | | |
| | | | | |

AUSA: Steven Skrocki      Agent/Agency: SA Michael Loughton, USFWS      Agent's Phone: 907-917-8803

Form Revised Oct 2021